# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NORTH DAKOTA

| Donald T. Johns, | ) | |
|---|---|---|
| Plaintiff, | ) ) ) | **ORDER** |
| vs. | ) ) | |
| Nancy A. Berryhill, Acting Commissioner of Social Security, | ) ) ) ) | Case No. 1:17-cv-215 |
| Defendant. | ) | |

The plaintiff, Donald T. Johns ("Johns"), seeks judicial review of the Social Security Commissioner's denial of his request for a waiver of overpayment of Supplemental Security Income ("SSI") pursuant to 42 U.S.C. § 205(b). For the reasons set forth below, the decision of the ALJ is affirmed.

## I. BACKGROUND

Johns was honorably discharged from the United States Marine Corp in 1976. (Tr. 99). Deemed to have a service-connected disability of twenty percent, he was awarded a modest monthly benefit by the United States Veterans Administration ("VA").

Johns filed an application for Title XVI SSI payments on July 15, 2010, alleging a disability onset date of January 2010. (Id.). On his application he listed his VA benefits and food stamps as his only sources of income. (Id.).

Johns' application for SSI was granted and he began receiving monthly SSI payments in 2010. The amount he received was offset or reduced by the amount of his monthly VA benefits.

On March 3, 2012, the Social Security Administration ("SSA") issued a notice advising Johns that, because he showed "no income from February 2012 on," his monthly SSI payments

1

would increase effective April 2012. (Tr. 24-27).

On July 12, 2013, the SSA issued a notice to Johns that, from April 2012 through June 2013, he received overpayments totaling $3,481.00 due to a mistaken belief on its part that he no longer had other sources of income. (Tr. 28-31). It further advised that it would deduct $71 from his SSI payments every month to offset the overpayment or, in the alternative, he could repay the entire $3,481.00 by check, money order, or credit card. (Id.). Finally, it informed him of his right to request a waiver of overpayment. (Id.).

Johns had apparently spent the $3,4181.00 on dental care and so he could not simply return it to the SSA. On July 24, 2013, he filed a request for a waiver of overpayment on the grounds that he "was never told [his] payment was changing or why it was changing[,] [he was] not aware there was anything wrong[,] [and he] did not tell social security that [his] VA benefits stopped." (Tr. 36-38)

On November 6, 2013, Johns reported to the SSA's office in Bismarck, North Dakota, for a "personal conference." (Tr. 49). That same day the SSA denied Johns' waiver request, opining:

> NH was overpaid from 04/12-06/13 in the amount of 3471.00. The overpayment was discovered during a redetermination. It was found that VA income was not listed as a source of income.
>
> NH submitted an SSA-635 Request for Waiver of Overpayment Recovery on 7/24/2013. The waiver states that he was not at fault in causing the overpayment because he was never told that his payment was changing or why it was changing.
>
> During the personal conference, we discussed his responsibility to report all income. I asked him if he was aware that payment had increased in April 2012. He stated yes, but he thought the reason it increased, was due to a phone call he made to the congressman's office. He contacted the congressman because he disagreed with SSI payments being reduced due to his VA income. He thought the law changed. We reviewed the letter that was sent to him on March 3, 2012. The letter clearly states that his SSI payment was increasing because "he had not income from 02/12 on." Since the NH was notified of the change in payment, it was his responsibility to

2

contact SSA to report that he was receiving VA income. The NH was fully aware
of the effect his VA income had on his SSI payments and should have known that the
SSI payment was incorrect. Since he was aware of this, we cannot find him without
fault in causing the overpayment. Therefore, the waiver is being denied.

(Doc. No. 503).

An administrative law judge ("ALJ") convened an administrative hearing at Johns' request on March 21, 2014. (Tr. 55, 59-60, 69-73, 130-146). Johns testified at the hearing that he suffers from schizophrenia, which sometimes affects his judgment, and that the stress regarding the overpayment had exacerbated his symptoms. (Tr. 135-137). He also testified about his VA benefits, how he obtained them, and how he had always taken issue with how the SSA had used them when calculating his SSI payments. (Tr. 136-37). When asked to explain what he meant by "issue," he responded that he had "an issue with them taking something like the veteran's benefits away from [him]." (Tr. 137). When the topic of finances and his ability to management them was broached, he testified that while he lived on his own he would look to family for help budgeting his money. (Tr. 138, 141).[1]

On April 15, 2014, the ALJ issued an order denying Johns' waiver request. (Tr. 10-17, 107-114). The ALJ accepted the SSA's determination that, from April 2012 until June 2013, Johns was overpaid SSI in the amount of $3,481.00. The ALJ further concluded that Johns was "not without fault in causing the overpayment" as he should have recognized that the SSA had erred when recalculating his SSI benefits and reported it. Specifically, he opined:

> After considering the claimant's testimony and reviewing all of the documents in the record, the undersigned finds the claimant was not without fault in causing or accepting the overpayment. The claimant reported his VA benefits at the time he

---

[1] The hearing transcript is missing pages 11 and 12, or what would have been marked as pages 139 and 140 in the administrative record filed by the SSA with the court.

> applied for SSI on July 15, 2010 (Exhibit 1, page 2), and he testified that he noticed the offset in his monthly SSI payments. The claimant had knowledge that his VA benefits counted as income for determining his SSI monthly payment, at the time he received the notice from the Social Security Administration dated March 3, 2012, informing him of the increase in his monthly SSI payment (Exhibit 2). The claimant testified that he complained about the VA offset to his Senator. Thereafter, the claimant has asserted he believed that his complaint led to a change in the law and stopped the offset, causing the increase in his monthly SSI payment. However, the claimant testified that he did not receive any correspondence from the Social Security Administration informing him of a change in the law, and he never inquired whether the law had changed after he received the notice dated March 3, 2012.
>
> Even though the Social Security Administration may have been at fault in making the overpayment, the regulation that controls this issue does not relieve the claimant from liability for repayment if he was not without fault in accepting the overpayment (20 CFR 416.552). The claimant knew or should have known his VA benefits would have impacted the amount of his SSI payments, and there is no evidence that the claimant was provided with incorrect information about a change in the law requiring the offset of his VA benefits. The undersigned has considered the claimant's testimony that he is disabled due to a mental impairment, schizophrenia, which affects his judgment (20 CFR 416.552). The claimant has asserted that his interactions with the Social Security Administration increased his schizophrenic symptoms, but he has not submitted medical evidence to support this allegation, which seems to be an after-the-fact rationalization. The record contains no evidence that the claimant contacted the Social Security Administration to request assistance in dealing with the technical requirements of SSI eligibility.
>
> There is no need to discuss whether recovery of the incorrect payment would defeat the purpose of the Social Security Act or be against equity and good conscience, as these issues become relevant only if the claimant was without fault in causing or accepting the overpayment.

(Doc. No. 13-4).

On May 1, 2014, Johns requested a review the ALJ's decision by the Appeals Council. (Tr. 115-120). Unable to locate Johns' file, the Appeals Council issued an order on February 24, 2017, remanding the matter back to the ALJ for a de novo hearing. (Tr. 121-125). On June 23, 2017, it vacated its remand order as it had located Johns' file. (Tr. 128-129). On August 23, 2017, it denied Johns' request for review, making the ALJ's decision the final decision of the Commissioner. (Tr.

4

3-5).

Johns initiated the above-entitled action by Complaint on October 10, 2017. He filed a Motion for Summary Judgment on January 24, 2018. The SSA subsequently filed its own motion for summary judgment. Both motions have now been fully briefed and are ripe for the court's consideration.

## II.    APPLICABLE STATUTES AND REGULATIONS

Title XVI of the Social Security Act, 42 U.S.C. § 1381 et seq., provides for the payment of monthly benefits to indigent persons under the SSI program. See Bowen v. Yuckert, 482 U.S. 137, 140 (1987). "The basic purpose underlying the supplemental security income program is to assure a minimum level of income for people who are age 65 or over, or who are blind or disabled and who do not have sufficient income and resources to maintain a standard of living at the established Federal minimum income level." 20 C.F.R. § 416.110.

An overpayment of SSI occurs when a beneficiary is paid more than the amount due for a given period. 20 C.F.R. § 416.537(a). If an SSI beneficiary has been overpaid, the SSA can recoup the overpayment by reducing the amount of future benefit payments. See 42 U.S.C. § 1383(b)(1)(A); 20 C.F.R. § 416.570(a).

An SSI beneficiary may request both a reconsideration of the overpayment determination and a waiver of overpayment collection. See POMS, § SI 02201.025A. A waiver of overpayment collection may be granted when:

(a)    The overpaid individual was without fault in connection with an overpayment, and

(b)    Adjustment or recovery of such overpayment would either:

(1)    Defeat the purpose of title XVI, or

5

(2) Be against equity and good conscience, or

(3) Impede efficient or effective administration of title XVI due to the small amount involved.

20 C.F.R. § 416.550; see also 42 U.S.C. § 404(b)(1) (stating that only persons who are without fault are entitled to an adjustment or waiver of overpayment). "When an individual seeks a waiver of overpayment recovery, [he or] she has the burden of proof." Sipp v. Astrue, 641 F.3d 975, 981 (8th Cir. 2011).

Although a finding of fault "depends on all of the circumstances in the particular case," an individual will be found to be at fault in connection with an overpayment when an incorrect payment resulted from a "[f]ailure to furnish information which the individual knew or should have known was material" or from "[a]n incorrect statement made by the individual which he [or she] knew or should have known was incorrect," or where the individual "did not return a payment which he [or she] knew or could have been expected to know was incorrect." 20 C.F.R. § 416.552. In determining whether an individual was without fault in connection with an overpayment, the SA must "specifically take into account any physical, mental, educational, or linguistic limitation of [the] individual (including any lack of facility with the English language)." 42 U.S.C. § 1383(c)(1)(A); 20 C.F.R. § 416.552. Among other things, the Agency must consider "the individual's understanding of the reporting requirements, the agreement to report events affecting payments, knowledge of the occurrence of events that should have been reported, ... [and] ability to comply with the reporting requirements." 20 C.F.R. § 416.552.

Bad faith is not necessary for a finding of fault; "'rather, an honest mistake may be sufficient to constitute fault.'" Cruz v. Astrue, No. 08cv5588 (PKC), 2009 WL 1835632, at *3 (S.D.N.Y. June 24, 2009) (quoting Center, 704 F.2d at 680). Furthermore, an overpaid individual "is not relieved

of liability and is not without fault solely because [the SSA] may have been at fault in making the overpayment." 20 C.F.R. § 416.552.

## III. STANDARD OF REVIEW

The scope of this court's review is limited in that it is not permitted to conduct a *de novo* review. Rather, the court looks at the record as a whole to determine whether the Commissioner's decision is supported by substantial evidence. Milam v. Colvin, 794 F.3d 978, 983 (8th Cir. 2015).

"Substantial evidence is less than a preponderance of the evidence, but is 'such relevant evidence as a reasonable mind would find adequate to support the [ALJ's] conclusion.'" Grable v. Colvin, 770 F.3d 1196, 1201 (8th Cir. 2014) (quoting Davis v. Apfel, 239 F.3d 962, 966 (8th Cir. 2001)). "If the ALJ's decision is supported by substantial evidence, [the Court] may not reverse even if substantial evidence would support the opposite outcome or [the Court] would have decided differently." Smith v. Colvin, 756 F.3d 621, 625 (8th Cir. 2014) (citing Davis v. Apfel, 239 F.3d 962, 966 (8th Cir. 2001)).

## IV. DISCUSSION

Johns does not dispute that he received an overpayment of benefits. Rather, he takes the tack that he did not perceive or appreciate the SSA's error and thus has no fault in connection with the overpayment. In so doing he asserts that the ALJ and, by extension, the Commissioner, failed to make an explicit credibility determination, consider how his schizophrenia affects his judgment, or seek corroboration from the VA and thus failed to demonstrate that he was his aware of his reporting obligations. He further asserts that the SSA provided him with erroneous information. Finally, he asserts that, by vacating its remand order and affirming the ALJ's decision, the Appeals Council engaged in an ultra vires act that denied him due process.

7

For support, Johns relies in part on the Eighth Circuit's holding in Coulston v. Apfel, 224 F.3d. 897 (8th Cir. 2000). There, the SSA erroneously sent a $20,658 check to a claimant who was awarded benefits due to an intellectual impairment. Coulston v. Apfel, 224 F.3d. 897, 898. Believing the check was a back payment for medical expenses he had previously incurred, the claimant cashed and spent most of the check with the assistance from his ex-wife and a friend on bills and Christmas presents. Id. at 899. Seeking to recoup the amount of the check, the SSA denied the claimant's request for a waiver of overpayment. Id. On appeal, the Eighth Circuit faulted the ALJ for failing to account for how claimant's intellectual impairments would have affected his ability to know the check was erroneous and for imputing to the claimant the abilities of those who had assisted him in cashing and spending the check. Id. at 899-90. It concluded, while a very close call, the claimant's subjective thinking coupled with the objective evidence of his intellectual impairment were barely sufficient to demonstrate that the claimant was without fault and that requiring repayment would under the circumstances defeat the purpose of Social Security. Id.

### A. Credibility

Generally, in a waiver of overpayment-recovery case, "if an ALJ chooses not to believe a claimant, it is necessary that the fact finder articulate any reasons for questioning the claimant's credibility." Lang v. Astrue, 2009 WL 3711545 (D. Minn. November 3, 2009).

Contrary to Johns' assertions, the record evinces that the ALJ did endeavor to address Johns' credibility. For example, when concluding that Johns knew or should have known of his reporting requirement, the ALJ contrasted Johns stated belief that his call to Congress had resulted in a change in the law to his acknowledgment at the administrative hearing that he had reported his VA benefits as income when applying for SSI, was aware that his VA benefits factored into the calculation of

8

his monthly SSI payments, had received notice from the SSA that it was increasing his monthly SSI payments because he was receiving no other income, and had neither been notified of any change in the law nor had made any inquiries about the state of the law. The ALJ also explicitly discounted Johns' assertions regarding the exacerbation of symptoms when dealing with the SSA as an after-the-fact rationalization, emphasizing the dearth of substantiating medical evidence or evidence that Johns had ever requested assistance from the SSA in navigating its rules and regulations.

The import of Johns concerns about what he perceives as a lack of inter-agency communication, i.e., the SSA purported failure corroborate with the VA his stated belief that his phone call to Congress changed the law, is not immediately apparent. There is nothing in the record to suggest, and Johns does not allege, that he communicated his belief regarding the state of the law to someone at the VA let alone anyone outside of the SSA.

As for Johns' reliance on the holding in Coulston, it is misplaced. Unlike the claimant in Coulston, there is nothing in the record raising explicit concerns about Johns' literacy, specifically his inability to read or comprehend notices sent to him by the SSA, and there has not been the imputation of other's knowledge to Johns.

The court appreciates that Johns was deemed disabled because of his schizophrenia and therefore eligible for SSI. His disability is not a "trump card" that he can simply play when it comes to the issue of fault, however. Notably, he did not present any medical evidence or explanation throughout the administrative process that is demonstrative of the affect of schizophrenia on his judgment or how his schizophrenia was being managed/treated. Rather, he simply asserted, as he does now, that his schizophrenia can *sometimes* affect his judgment.

As discussed above, the burden is ultimately on Johns to demonstrate that he was without

9

fault. Johns has not articulated how his disability affected his judgments or perception, and in so doing leave it to the court to speculate or surmise. This is something that the court cannot do, however. The ALJ determined that Johns did not meet this burden based upon the evidence before him. There is substantial evidence in the record to support his determination.

### B. Reliance on Erroneous Information

Johns' assertion that his reliance on erroneous information from the SSA somehow entitles him to waiver of overpayment is specious. The erroneous information to which Johns is referring is the notice he received from the SSA that his SSI payments would be increasing as he no longer had any sources of income. First, as noted above, an individual "is not relieved of liability and is not without fault solely because [the SSA] may have been at fault in making the overpayment." 20 C.F.R. § 416.552. Second, acceptance of Johns' assertion would require the court to ignore rules, regulations, and case law authorizing the SSA to recoup overpayments.

### C. Adherence to POMS

Johns' assertion that the SSA failed to adhere to its own guidelines is likewise specious. Obtaining waiver of overpayment collection is a two step process. The claimant must demonstrate that he was without fault in connection with an overpayment <u>and</u> that adjustment or recover of repayment would defeat the purpose of SSI, impede administrative of SSI, or be against equity and good conscience. Because he had concluded that Johns had not satisfied the first step, the ALJ saw no need to address the second step. Given the circumstances the ALJ decision to forego an analysis or discussion cannot be fairly characterized as an error or an abdication of the SSA's rules and regulations.

D.     **Ultra Vires Act**

Johns asserts that "[b]y issuing an Order to Vacate, without the ALJ first surrendering jurisdiction, the Appeals Council engaged in ultra vires act to deny [him] a de novo hearing under HALLEX-I-2-85(C)(2) (Hearings, Appeal and Litigation Manual)." (Doc. No. 15-1). In so doing, he acknowledges that "HALLEX's are not afforded controlling weight and are intended to be guidelines for interal use by Social Security..." (Id.)

The court can find no case law, regulation, policy statement, or documented procedure that supports Johns' assertion. The Commissioner does not, however, provide the court with clear statutory, regulatory, or procedural support for the proposition that the Appeals Council retained the necessary jurisdiction to act as it did in this matter. The sections of the Social Security Administration's Hearings, Appeals and Litigation Law Manual, known as HALLEX, relied upon by the Commissioner discuss only the circumstances under which an ALJ may seek clarification of an Appeals Council remand order. See HALLEX Vol. I, §§ I–2–1–85 and I–3–7–50. That is not what happened here—the Appeals Council acted on its own initiative. Nevertheless, it is Johns' burden to establish legal and factual support for his assertion that there exists error sufficient to warrant remand, and he has not done that.

V.     **CONCLUSION**

The court finds there is substantial evidence in the record to support the Commissioner's decision and that Johns has not met his burden of establishing that the Appeals Council's actions were improper. Accordingly, the Commissioner's Motion for Summary Judgment (Doc. No. 16) is **GRANTED**, Johns' Motion for Summary Judgment (Doc. No. 15) is **DENIED**, and the Commissioner's final decision is affirmed.

**IT IS SO ORDERED.**

Dated this 18th day of December, 2019.

                                                    */s/ Clare R. Hochhalter*
                                                  Clare R. Hochhalter, Magistrate Judge
                                                  United States District Court